# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| G. RANDOLPH GOODLETT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 08-298-LPS |
| | : | |
| STATE OF DELAWARE, DEPARTMENT | : | |
| OF ELECTIONS | : | |
| | : | |
| Defendant. | : | |

Jeffrey K. Martin and Timothy J. Wilson, MARTIN & ASSOCIATES, P.A., Wilmington, DE, Attorneys for Plaintiff.

A. Ann Woolfolk, DEPARTMENT OF JUSTICE, Wilmington, DE, Attorney for Defendant.

## **MEMORANDUM OPINION**

March 6, 2009
Wilmington, Delaware

**STARK, U.S. Magistrate Judge**

Pending in this employment discrimination action is Defendant Delaware Department of

Elections' motion to dismiss Plaintiff Randolph Goodlett's Complaint for failure to state a claim

upon which relief may be granted and insufficiency of service of process. (D.I. 4)  For the reasons

set forth below, the motion to dismiss will be granted in part and denied in part.

## BACKGROUND[1]

Actions pre-dating Goodlett's first EEOC filing

In 1988, Goodlett, who is African-American, was hired for the position of Mini/Micro

Computer Specialist for the Kent County Department of Elections. (D.I. 1 ¶ 4)  Until 1990, he

was the only technician employed by the Delaware Department of Elections ("Department"), and

provided service to Kent, Sussex, and New Castle Counties. (D.I. 1 ¶ 6)  The Department hired

four more technicians between 1990 and 1994, all of whom were trained by Goodlett. (D.I. 1

¶¶ 8-9)

In or about 1994, Joyce Wright was appointed Director of the Kent County Department of

Elections. (D.I. 1 ¶ 10)  Soon after, the Deputy Administrative Director of Kent County, Donna

Harrington, held a meeting of Kent County Department of Elections employees and informed

them that all of them, "especially [Goodlett], had to be very careful." (D.I. 1 ¶ 11)  At a date not

set forth in the Complaint, Wright demanded Goodlett – but no other employee – provide her with

his job description and responsibilities, and told Goodlett that "no one in the Kent County

---

[1]For purposes of the instant motion, the Court accepts all well-pleaded factual allegations
set forth in the Complaint as true, and views them, as it must, in the light most favorable to
Goodlett. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000).

Department of Elections wanted to work with him." (D.I. 1 ¶¶ 13-14)  At some unspecified date,

Wright held a mandatory meeting of Kent County employees to discuss Goodlett's

"shortcomings," requiring his co-workers to participate in the discussion.  (D.I. 1 ¶¶ 15-17)  When

Goodlett thereafter made requests for assistance, he received "threats by Wright to go to the

legislators and tell them that [Goodlett] was unable to do his job."  (D.I. 1 ¶ 18)

　　　At some time between 1999 and 2000, Goodlett's employment status was reclassified

from Application Support Specialist (pay grade 14) to Senior Application Support Specialist (pay

grade 16).  (D.I. 1 ¶ 19)  Goodlett was told to keep his promotion confidential; he was specifically

warned not to discuss it with Stanley Anderson, the Application Support Specialist for the New

Castle County Department of Elections, who is also African-American.  (D.I. 1 ¶ 20)

　　　In 2001, Goodlett interviewed for the open position of Senior Application Support

Specialist for the Office of the Commissioner of Elections, which was advertised only to

Department employees.  (D.I. 1 ¶ 21)  This position would have been a lateral transfer for

Goodlett, requiring him to provide essentially the same services but in a different county.  (D.I. 1

¶ 22)  Lisa Wragg, a Caucasian female colleague of Goodlett's at the Kent County Department of

Elections, was hired instead.  (D.I. 1 ¶ 26)  Wragg had no professional experience in Information

Technology prior to obtaining the Senior Application Support Specialist position.  (D.I. 1 ¶ 31)

　　　On a date not set forth in the Complaint, Goodlett contacted Thomas Cook, then the

Commissioner of Elections, and Lisa Bradley, Head of Personnel, "about the treatment he had

received."  (D.I. 1 ¶ 32)  In or about 2001, a hearing was held before the Merit Employees

Relations Board (MERB) to discuss Goodlett's charge of hiring disparities by the Kent County

Department of Elections.  (D.I. 1 ¶ 34)  After the first day of testimony, the hearing was

postponed.  (D.I. 1 ¶ 36)

In January 2002, Frank Calio succeeded Cook as Commissioner of Elections.  (D.I. 1 ¶ 38)
Calio contacted Goodlett, telling him that if he pursued his grievance, "he would be putting a
female employee out of work."  (D.I. 1 ¶ 40)  Calio further questioned whether Goodlett
recognized the name of Senator Nancy Cook, and, after hearing Goodlett's affirmative answer,
Calio told Goodlett that his "actions and their effect on Mr. Cook was going to have
ramifications."  (D.I. 1 ¶¶ 42-43)  Wright also informed Goodlett that by continuing with his
grievance he "would jeopardize [his] pension and retirement."  (D.I. 1 ¶ 44)  "[U]nder duress,"
Goodlett withdrew his grievance.  (D.I. 1 ¶ 45)

In 2003, Wragg was promoted and her position as Senior Application Support Specialist
opened up again.  (D.I. 1 ¶ 46)  Goodlett once again interviewed for the position and was rejected.
(D.I. 1 ¶¶ 49-50)  Joseph Clark, a Caucasian male, got the job, and "was hired at 105% of his
midpoint."  (D.I. 1 ¶¶ 51-52)  By contrast, Goodlett and Anderson – the African-American Senior
Application Support Specialist for the New Castle County Department of Elections, who was
second only to Goodlett in years of service to the Department – "only received 85% and 80% of
their midpoint[s,] respectively."  (D.I. 1 ¶¶ 54-55)  However, Wayne Osborne, Senior Application
Support Specialist for Sussex County and, like Clark, a Caucasian male, received 100% of his
salary midpoint.  (D.I. 1 ¶ 58)  Goodlett was required to train Clark for his new role.  (D.I. 1 ¶ 53)

Goodlett files EEOC discrimination charge

"[I]n or about the winter of 2003-2004," Goodlett filed a discrimination charge with the
Equal Employment Opportunity Commission ("EEOC") alleging that the Department favored

Caucasians over African-Americans in its hiring practices and assigned Caucasian employees

higher rates of pay than similarly-situated African-American employees. (D.I. 1 ¶¶ 60-61) After

Goodlett filed his claim, the Department's Personnel Office informed him that a mistake had been

made in processing the documents related to his previous employment reclassification. (D.I. 1

¶ 63) The Department retroactively raised Goodlett's salary to 100% of his midpoint and further

offered him 105% of his midpoint if he dropped his then-pending action against Calio. (D.I. 1

¶¶ 64-65) Goodlett accepted the offer as it related to his charge of unfair hiring practices, but he

"requested that the two charges he filed with the EEOC be handled separately from each other,"

allowing his pay discrimination charge to be heard on the merits. (D.I. 1 ¶¶ 66-68)


The Department reneges on its settlement offer

At a date not set forth in the Complaint, the Department informed Goodlett that it would

not be honoring its promise to raise his pay to 105% of his salary midpoint. (D.I. 1 ¶ 69)

Goodlett further discovered that at the time his salary was retroactively raised to 100% of his

midpoint, the Department had "increased the percent of the midpoint for all of [Goodlett's] co-

workers to 100%." (D.I. 1 ¶ 73)


Actions pre-dating Goodlett's second EEOC filing

At some point in 2003, in preparation for the forthcoming presidential primary, Wright

told Goodlett he would be required to read voting machine cartridges on election night, a task

which typically involved logging, reading, and storing the cartridges used. (D.I. 1 ¶¶ 76-77)

Goodlett had been providing this service since 1994. (D.I. 1 ¶ 79) Initially, Goodlett refused,

4

pointing out that this service was the responsibility of the Office of the Commissioner of Elections, but ultimately he agreed he would do it. (D.I. 1 ¶¶ 78, 84-92)  However, Doris Young, Office Manager for the Kent County Department of Elections and a Caucasian female, was instead asked to read the cartridges. (D.I. 1 ¶ 93)  Wright requested that Wayne Osborne of the Sussex County Department of Elections assist Young in testing the cartridges, and Commissioner of Elections Calio provided Young with additional assistance. (D.I. 1 ¶¶ 95-96)  Calio offered to pay Young for reading the cartridges on election night, whereas Goodlett had been told that he would not be paid for doing so. (D.I. 1 ¶¶ 97-98)

Eventually, Wright told Goodlett not to come to work on election day in 2004,[2] though his absence meant there was no technician on duty that day. (D.I. 1 ¶¶ 108-10)  Wright hired Gary Brosier to assist Young with reading cartridges. (D.I. 1 ¶ 111)  Goodlett had never received assistance with reading cartridges. (D.I. 1 ¶ 113)

In or about August 2004, Goodlett returned from a vacation to find he no longer had clearance to perform the Security Officer functions of his position as Senior Application Support Specialist. (D.I. 1 ¶¶ 100-101)  Wright informed Goodlett that the Security Officer duties had been given to Young, because Wright "wanted to know what was going on." (D.I. 1 ¶ 105)  Though his clearance was revoked, Goodlett still had to perform security tasks if Young was absent from work. (D.I. 1 ¶¶ 105-06)  He received no further explanation as to why he was relieved of his security duties. (D.I. 1 ¶ 109)

Wright's policy since joining the Kent County Department of Elections had been to

---

[2]It is unclear from the Complaint if the allegations in this paragraph relate to the date of the primary election or the general election.  The Court believes they relate to the primary election, but it makes no difference to the resolution of the pending motion.

celebrate employees' birthdays with lunch and a cake. (D.I. 1 ¶¶ 114-15) In September 2004,

Wright directed that the office would not celebrate or acknowledge Goodlett's birthday. (D.I. 1

¶¶ 118-19) Goodlett was the only African-American employee in the Department's Kent County

Office at the time of Wright's order. (D.I. 1 ¶ 120) Shortly after this incident, Goodlett began to

inquire of co-workers about the unacknowledged birthday, resulting in an interrogation from

Wright as to the reason for his inquiries. (D.I. 1 ¶¶ 123-24)

At a "previous[]" time not identified in the Complaint, Wright had instructed Goodlett not

to speak to Department employees Anderson or Wragg because "they would get him in trouble."

(D.I. 1 ¶ 126)


<u>Goodlett files second EEOC discrimination charge</u>

On February 7, 2007, Goodlett filed a second discrimination charge with the EEOC. (D.I.

1 Ex. 2) The charging form included a new claim of retaliation. *Id.* Goodlett alleged:

> [Goodlett] and other Black employees are systematically paid less than similarly-situated White employees, due to their race. Respondent's supervisor, Joyce L. Wright has subjected [Goodlett] to a hostile work environment by directing a pattern of intimidation and derogatory comments towards [Goodlett] in retaliation for [Goodlett] filing a charge of Employment Discrimination with the EEOC. Respondent has stripped [Goodlett's] title of Information Security Officer and denied access to Respondent's computer main frame in retaliation for filing a charge of Employment Discrimination with the EEOC.
>
> Stan Anderson (Black) was also initially denied equal pay to similarly situated White coworkers. Respondent has further shown hostile and retaliatory motivation against [Goodlett] by purposely not acknowledging [Goodlett's] birthday, while acknowledging other coworkers['] birthday[s] with an intra-office celebration.

*Id.*

6

EEOC dismisses Goodlett's charge

On February 20, 2008, the EEOC adopted the findings of the Delaware Department of

Labor that Goodlett's claims were time-barred because more than 300 days (the statute of

limitations for violations of federal employment discrimination laws) had passed between the last

adverse employment action, alleged by Goodlett to have occurred in 2004, and February 7, 2007,

the date he filed his EEOC charge. *See id.; see also* D.I. 4 Ex.1.  The EEOC provided Goodlett

with notice of his right to sue.  (D.I. 1 Ex. 2)

Proceedings in this Court

Goodlett filed the instant action on May 21, 2008.  (D.I. 1)  The case was initially assigned

to Judge Sue L. Robinson and referred to a magistrate judge for all pretrial proceedings. (D.I. 7)

The Department moved for dismissal on June 11, 2008.  (D.I. 4)  On February 23, 2009, the

parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.  (D.I. 12)

## LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d

218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).  Thus, the

Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in

the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not

entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## DISCUSSION

*Goodlett's Title VII Race Discrimination Claim*

Count I of Goodlett's Complaint alleges that the Department discriminated against him because of his race, "hav[ing] the effect of depriving Plaintiff of equal employment opportunities and otherwise affect[ing] his employment." (D.I. 1 ¶ 128) The Department contends that this

8

count must be dismissed because Goodlett brought the same charge of discrimination to the

EEOC in 2004 and, following the EEOC's issuing him a Right to Sue letter on September 29,

2006, he failed to file suit within the 90-day filing period.  (D.I. 4 at 13-14 (citing 42 U.S.C.

§ 2000e-5))  The Department also argues that Goodlett's claim is subject to dismissal because

Goodlett failed to file his EEOC discrimination charge within 300 days after the last discrete act

of alleged discrimination, as required by Title VII.  (D.I. 4 at 7 (citing 42 U.S.C. § 2000e-5(e)(1)))

Goodlett responds that the Department's positions are misguided because the bulk of the

factual allegations of discrimination set out in the Complaint are "for background purposes only."

(D.I. 5 at 3)  According to Goodlett, "the entire and exclusive basis" of his Complaint are three

allegations, two of which go to his Title VII discrimination claim (the other goes to his retaliation

count, *see infra*).  These allegations are, first, that Goodlett's "initial complaint of racial

discrimination was never properly addressed by [the Department] after he filed his first charge of

discrimination with the EEOC" because, contrary to his agreement, he was paid 100% (and not

105%) of his midpoint; and, second, that Goodlett and "other Black employees are systematically

paid less than similarly-situated White employees, due to their race."  (D.I. 5 at 3-4)[3]

The first of these allegations, relating to the Department's handling of the race

discrimination charges Goodlett brought before his first EEOC filing in 2003-04, must be

dismissed.  Goodlett chose not to sue the Department following his first EEOC complaint.

---

[3]Hence, it appears Goodlett has abandoned any claim to relief relating to his unsuccessful
attempts (in 2001 and 2003) to obtain a lateral transfer to the position of Senior Application
Support Specialist for the Office of the Commissioner of Elections.  Even were he seeking to
press such a claim, it would have to be dismissed as untimely, as these hiring decisions were
made well over 300 days before Goodlett brought his 2007 EEOC complaint.  (D.I. 1 ¶¶ 24-26,
50-51)

Having once brought these claims before the EEOC, and having not followed up with a timely suit in District Court, Goodlett could not three years later present these same claims to the EEOC. *See Brown v. Unified School Dist. 501, Topeka Publ. Schools*, 465 F.3d 1184, 1186 (10th Cir. 2006); *Spears v. Missouri Dept. of Corrections*, 210 F.3d 850, 853 (8th Cir. 2000); *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986).

A portion of Goodlett's other race discrimination allegation – that he "and other Black employees are systematically paid less than similarly situated White employees" (D.I. 1 Ex. 2), and that this situation continued to exist at least through the filing of the Complaint (D.I. 5 at 6) – is not subject to dismissal at this time. The Department argues that Goodlett's pay disparity claim must be dismissed because Goodlett's 2007 EEOC complaint was not filed within 300 days of the allegedly discriminatory pay-setting decision; since the same pay-setting decision was a subject of Goodlett's January 2004 EEOC complaint, the decision he is challenging must have occurred before 2004. (D.I. 4 at 8-9; D.I. 6 at 3 (citing *Ledbetter v Goodyear*, 127 S. Ct. 2162, 2165 (2007)) However, the law in this regard was recently changed, such that the 300-day clock for filing a Title VII pay disparity claim starts anew with each discriminatory pay period. *See* "Lilly Ledbetter Fair Pay Act of 2009," Pub. L. No. 111-2, 123 Stat. 5 (Jan. 29, 2009) (amending 42 U.S.C.A. § 2000e-5). Because the post-2004 portions of the pay disparity claim could not have been raised in Goodlett's 2004 EEOC charge (since they had not yet occurred), Goodlett's pay disparity claim survives to the extent it relates to the period of 300 days prior to his 2007 EEOC filing.

Accordingly, the Department's motion to dismiss Count I will be granted in part and denied in part.

10

*Goodlett's 42 U.S.C. § 1981 Claim*

In Count III,[4] Goodlett complains that the Department discriminated against him on the basis of race in violation of Title 42 U.S.C. Section 1981. (D.I. 1 ¶¶ 134-36) The Department contends that states and state entities are immune from Section 1981 suits pursuant to the Eleventh Amendment. (D.I. 4 at 15-17) Goodlett has not responded to the Department's argument. In any event, the Department is correct. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 67 (1989); *see also Flax v. Delaware Div. of Family Services*, 2008 WL 1758857, at *11 (D. Del. April 16, 2008) ("[T]he Eleventh Amendment bars an action brought by an employee against the State under federal civil rights statute 42 U.S.C. § 1981."). As it is immune from suit under Section 1981, the Department's motion to dismiss Count III will be granted.

*Goodlett's Title VII Retaliation claim*

Finally, Count IV of the Complaint alleges that, in retaliation for his first EEOC complaint, the Department discriminated against Goodlett in violation of Title VII when it:

> (a) denied [Goodlett] opportunities for promotions despite his qualifications; (b) forced [Goodlett] to carry out job duties not consistent with his position as Senior Application Support Specialist; (c) forced [Goodlett] to work in a hostile, racially charged environment; and (d) failed to adequately address [Goodlett's] complaints regarding actions taken against him by other Department [] employees.

(D.I. 1 ¶ 138) In arguing for the timeliness of his retaliation claim, Goodlett notes that the 2007 EEOC charging form sets forth the allegation of hostile work environment "in the present perfect tense[,] indicating that [it] continues to occur." (D.I. 5 at 6) He maintains that his claim is

---

[4]The Complaint does not contain a Count II.

11

protected by the "continuing violation doctrine," which recognizes that a court may consider "behavior alleged outside the statutory time . . . so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* (citing *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 105 (2002)).

The Department responds that the four alleged retaliatory acts set forth in Paragraph 138 of the Complaint refer to events that occurred more than 300 days prior to Goodlett's second EEOC filing, and that the continuing violation doctrine applies only where at least one of the allegedly unlawful acts that created the hostile work environment is alleged to have occurred within the 300-day filing period.  (D.I. 4 at 9-10)  Moreover, the Department argues that even if any of the alleged retaliatory acts is not time-barred, Goodlett's allegations do not, *in toto,* constitute retaliation, and that "the bald assertion of retaliation" in the EEOC charging form is insufficient to state a claim.  (D.I. 4 at 10; D.I. 6 at 6)

Goodlett's retaliation claim must be dismissed because it fails to state a timely claim with sufficient specificity.  Goodlett declares that the specific factual allegations set out in the Complaint and referred to under Count IV – all of which occurred more than 300 days prior to his 2007 EEOC filing – were included "for background purposes only and to explain the context in which the discriminatory and retaliatory actions of the last two to three years occurred" (D.I. 5 at 3), but the Complaint fails to set out any allegations of retaliatory actions occurring within the filing period.  In their absence, Goodlett refers the Court to the conclusory generalization from the 2007 EEOC charge form that Wright "has subjected [Goodlett] to a hostile work environment by directing a pattern of intimidation and derogatory comments towards [Goodlett] in retaliation for [Goodlett] filing a charge of Employment Discrimination with the EEOC."  (D.I. 1, Ex. 2)  These

12

generalities are insufficient to state a claim.  "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 127 S. Ct. at 1964-1965

(internal citation and quotation marks omitted).

## CONCLUSION

The Defendant's motion to dismiss will be granted in part and denied in part.  An

appropriate order follows.

13